**DEREK SMITH LAW GROUP, PLLC**
IAN M. BRYSON, ESQUIRE
Attorney ID: 321359
450 7th Avenue, 30th Floor
New York, NY 10123
Direct: (267) 857-0849
ian@dereksmithlaw.com
*Attorneys for Plaintiff, Talia Poole*

### IN THE UNITED STATES DISTRICT COURT FOR THE
### EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TALIA POOLE, <br><br> Plaintiff, <br><br> v. <br><br> AMPLER PIZZA, LLC, <br> AMPLER PIZZA HOLDINGS, LLC, and <br> LITTLE CAESAR ENTERPRISES, INC., <br><br> Defendants. | Civil Action No. <br><br> JURY TRIAL DEMANDED <br><br> **COMPLAINT** |

Plaintiff, Talia Poole (hereinafter referred to as "Plaintiff"), by and through her attorneys, Derek Smith Law Group, PLLC, hereby complains of Defendants Ampler Pizza, LLC (hereinafter referred to as "AP"), Ampler Pizza Holdings, LLC (hereinafter referred to as "AH"), and Little Caesar Enterprises, Inc. ("LCE") (hereinafter collectively referred to as "Defendants"), upon information and belief, as follows:

### NATURE OF THE CASE

1. Plaintiff brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"). Plaintiff seeks compensatory damages, punitive damages, statutory penalties, pre- and post-judgment interest, and reasonable attorneys' fees and costs to redress the injuries Plaintiff has suffered as a result of, *inter alia*, unlawful

1

employment discrimination based on sex, sexual harassment, hostile work environment, retaliation, and constructive discharge.

## JURISDICTION AND VENUE

2. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it involves federal questions arising under Title VII.

3. This Court has supplemental jurisdiction over the state law causes of action pursuant to 28 U.S.C. § 1367 because they arise from the same nucleus of operative facts as Plaintiff's Title VII claims.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District, and Defendants are subject to personal jurisdiction here.

5. Plaintiff timely filed charges of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Philadelphia Commission on Human Relations ("PCHR") alleging violations of Title VII, the PHRA, and the PFPO.

6. Plaintiff's PHRA and PFPO claims are presently pending before the PCHR because less than one year has elapsed since the PCHR assumed jurisdiction over Plaintiff's charges. After one year, Plaintiff will seek leave to amend this Complaint to assert her PHRA and PFPO claims against Defendants.

7. On December 12, 2025, the EEOC issued Plaintiff a Notice of the Right to Sue ("RTS").

8. Plaintiff has timely filed this action within ninety (90) days of receiving the RTS and has complied with all administrative prerequisites to bring this lawsuit.

## PARTIES

9. Plaintiff Talia Poole is an adult individual and resident of the Commonwealth of Pennsylvania.

10. At all times relevant hereto, Defendant Ampler Pizza, LLC was and is a foreign limited liability company duly organized and existing by virtue of the laws of the State of Nebraska that conducts business in the Commonwealth of Pennsylvania.

11. At all times relevant hereto, Defendant Ampler Pizza Holdings, LLC was and is a foreign limited liability company duly organized and existing by virtue of the laws of the State of Nebraska that conducts business in the Commonwealth of Pennsylvania.

12. At all times relevant hereto, Defendant Little Caesar Enterprises, Inc. was and is a foreign business corporation duly organized and existing by virtue of the laws of the State of Michigan that conducts business in the Commonwealth of Pennsylvania.

13. At all times relevant hereto, Defendant AH operated as Defendant AP's parent company, thereby exercising ownership and control over Defendant AP.

14. At all times relevant hereto, Defendant LCE owned and operated a chain of fast-food restaurants under the trade name "Little Caesars Pizza" with locations nationwide and internationally.

15. At all times relevant hereto, Defendant AP and Defendant AH were franchised to operate multiple Little Caesars Pizza restaurants under contract with Defendant LCE.

16. Upon information and belief, Defendant LCE grants franchises to operate Little Caesars Pizza restaurants and grants sublicenses to franchisees to use the Little Caesars Pizza trademarks.

17. At all times relevant hereto, Defendants owned and operated numerous locations of a restaurant commonly known as "Little Caesars Pizza."

18. At all times relevant hereto, Defendants jointly employed Plaintiff.

19. Facts demonstrating that Defendants jointly employed Plaintiff include, but are not limited to, the following:

    a. Defendants permitted Plaintiff to work;

    b. Defendants had an economic interest in the Little Caesars Pizza locations in which Plaintiff worked;

    c. Defendants benefitted from Plaintiff's work;

    d. Defendants had either functional and/or formal control over the terms and conditions of Plaintiff's work;

    e. Plaintiff performed work integral to Defendants' operations.

20. By way of a first example, Defendant AP and Defendant AH had the power to hire and fire Plaintiff, controlled the terms and conditions of her employment, and determined the rate and method of any compensation in exchange for Plaintiff's services.

21. By way of a second example, Defendant LCE possessed and exercised the authority to require that Defendant AP maintain recordkeeping of its operations, including specific systems for tracking employees' hours and wages, and for retaining payroll records.

22. By way of a third example, upon information and belief, Defendant LCE controls and/or approves the appointment of management-level employees of Defendant AP.

23. By way of a fourth example, upon information and belief, Defendant LCE mandated and controlled sexual harassment policies distributed by Defendant AP and Defendant AH.

24. Upon information and belief, Defendant LCE mandated, implemented, and monitored sexual harassment and anti-discrimination policies applicable to franchise locations and retained authority to enforce compliance with such policies.

25. By way of a fifth example, upon information and belief, Defendant LCE supervises the opening of Little Caesars Pizza franchises, including the opening of Defendant AP.

26. By way of a sixth example, upon information and belief, Defendant LCE imposes strict operational restrictions on Defendant AP, including, but not limited to, restaurant appearance and layout requirements, operations standards, management standards, use of suppliers, and advertising standards. Defendant LCE also guides Defendant AP on how to hire and train employees and provides materials and training regarding directing employees as to how to perform their jobs.

27. By way of a seventh example, Defendant LCE runs a fast-food business dependent on its franchises and corporate-owned stores, selling and delivering food based on a prescribed model. As such, upon information and belief, Plaintiff's work as an employee performing duties within this model was integral to Defendant LCE's operations.

28. By way of an eighth example, upon information and belief, through its franchise agreement and in other ways, Defendant LCE sets and enforces requirements for the operation of its franchises, such as Defendant AP, including specifying equipment, uniforms, and supplies for the use of Plaintiff and other employees of Defendant AP, as well as specifying the methods and procedures Plaintiff and other employees of Defendant AP use in preparing customer orders. Through these requirements, Defendant LCE possessed and exercised the authority to control, directly or indirectly, Plaintiff's work.

29. By way of a ninth example, upon information and belief, Defendant LCE had the right to inspect the facilities and operations of Defendant AP, as well as to audit all records of Defendant AP and Defendant AH.

30. By way of a tenth example, upon information and belief, Defendant LCE could have terminated the franchise agreement between it and Defendant AP and could have caused Defendant AP to cease operation of the franchise restaurant under certain circumstances, including in the event of violations of the law. Thus, upon information and belief, Defendant LCE had the authority to stop violations of the law, and, ultimately, to control the employment of Plaintiff.

31. As such, at all times relevant hereto, Defendants jointly employed Plaintiff within the meaning of the applicable law.

## MATERIAL FACTS

32. In or around May 2019, Defendants hired Plaintiff as a Store Manager at their location at 5901 Lancaster Avenue, Philadelphia, Pennsylvania 19151. Plaintiff's responsibilities included, but were not limited to, supervising and coaching employees, building sales, controlling costs, and troubleshooting operational issues.

33. In or around March 2024, Plaintiff attended a training session at one of Defendants' designated store locations. Plaintiff was required to complete the training session at a different store location than the one at which she typically worked. During the training session, Defendants' Director of Operations, Thomas Case (hereinafter referred to as "Case"), met Plaintiff and immediately began sexually harassing her.

34. By way of example, while Plaintiff was standing at the store counter, Case stood closely behind her and whispered directly into Plaintiff's ear, "I have flour down there [referring to his penis], you should wipe it off for me." Case then proceeded to gesture toward his penis, which was covered with a white, powdery substance.

35. By way of further example, during the training session, Case told Plaintiff, "You shouldn't wear the company pin on your shirt because when customers come in, they'll look right at your boobs."

36. By way of further example, toward the end of the training session, Case told Plaintiff, "I can't believe they're taking you away from me. I want you to be mine."

37. In or around July 2024, Plaintiff reported Case's unwanted sexual comments and conduct to Defendants' District Manager, Mourad Ali (hereinafter referred to as "Ali").

38. Defendants failed to respond to Plaintiff's report or otherwise take any corrective action.

39. On or about July 30, 2024, Case visited the store location at which Plaintiff worked. While in the store, Case made several additional unwanted sexual comments to Plaintiff.

40. By way of example, Case told Plaintiff, "I am ready to retire and go on the beach to watch hot girls in bikinis."

41. On or about October 21, 2024, Plaintiff provided Defendants with a formal written statement regarding the sexual harassment to which she was subjected by Case.

42. Defendants failed to respond to Plaintiff's written complaint or otherwise take any corrective action.

43. On or about November 4, 2024, Plaintiff made yet another written complaint about Case's sexual harassment to Defendants' Human Resources Representative, Larry Bain (hereinafter referred to as "Bain").

44. Defendants failed to respond to Plaintiff's complaint or otherwise take any corrective action.

45. On or about May 9, 2025, Case visited Plaintiff's store location once again, this time accompanied by Defendants' President, Lisa Church (hereinafter referred to as "Church").

46. Despite Plaintiff's repeated sexual harassment complaints against Case, Plaintiff was forced to work in close proximity to Case.

47. That same day, Plaintiff complained to Ali about Defendants' repeated failure to respond to her reports of sexual harassment against Case.

48. Defendants once again failed to respond to Plaintiff's complaint or take any corrective action.

49. On or about May 22, 2025, Plaintiff complained directly to Church about Defendants' repeated failure to respond to Plaintiff's reports of sexual harassment against Case.

50. Defendants failed to respond to Plaintiff's complaint or take any corrective action.

51. Defendants' highest levels of management, including the President, were placed on direct notice of Plaintiff's complaints yet failed to take any remedial action, thereby ratifying and condoning Case's unlawful conduct.

52. Plaintiff could no longer endure the sexual harassment to which she was subjected on multiple occasions, particularly given the total lack of corrective action taken against Case by Defendants.

53. Plaintiff reasonably believed further complaints would be futile, as Defendants' persistent inaction signaled condonation of Case's unlawful conduct.

54. As a result of the foregoing, in or around June 2025, Defendants constructively discharged Plaintiff.

55. The conditions of Plaintiff's employment became so intolerable that a reasonable person in Plaintiff's position would have felt compelled to resign.

56. Defendants discriminated against Plaintiff on the basis of her sex by subjecting her to sexual harassment, a hostile work environment, and constructive discharge.

57. At all times relevant hereto, Defendants refused to investigate or take appropriate remedial action in response to Plaintiff's complaints of discrimination, sexual harassment, and hostile work environment.

58. Defendants' discriminatory conduct was severe and pervasive, and unreasonably interfered with Plaintiff's work performance and created an intimidating, hostile, and offensive working environment.

59. As a result of Defendants' conduct, Plaintiff felt extremely degraded, humiliated, victimized, and emotionally distressed.

60. As a result of Defendants' discriminatory and intolerable treatment, Plaintiff has suffered and continues to suffer severe emotional distress and physical ailments.

61. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, salary, bonuses, benefits, and other compensation that such employment entails.

62. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

63. Defendants have exhibited a pattern and practice of discrimination and retaliation.

64. Upon information and belief, Case has sexually harassed other subordinate employees in addition to Plaintiff while acting within his supervisory role.

65. Case has exhibited a pattern of pervasive sexual harassment, creating a hostile work environment, and discriminating against employees on the basis of their sex, which Defendants had actual and constructive knowledge of.

66. Upon information and belief, other complaints regarding Case's conduct were made to Defendants prior to Plaintiff's constructive discharge.

67. For all intents and purposes, Defendants treated Case as an untouchable employee and shielded him from any consequences of his egregious conduct.

68. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands punitive damages against all Defendants, jointly and severally.

69. The foregoing are just some of the examples of unlawful and discriminatory conduct to which Defendants subjected Plaintiff.

## COUNT I
## SEX DISCRIMINATION UNDER TITLE VII

70. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint as if more fully set forth herein at length.

71. Title VII, 42 U.S.C. § 2000e-2(a), provides that it shall be an unlawful employment practice for an employer "(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

72. At all times relevant hereto, Plaintiff was qualified for her position and performed her job satisfactorily.

73. Defendants subjected Plaintiff to adverse employment actions, including constructive discharge, because of her sex.

74. Defendants' conduct was motivated by unlawful sex-based considerations, including Plaintiff's complaints of sexual harassment perpetrated by a supervisory employee with authority over Plaintiff's continued employment.

75. Defendants engaged in unlawful employment practices by discriminating against Plaintiff on the basis of her sex, together with subjecting her to sexual harassment and a hostile work environment based on the same.

76. Defendants violated the above, and Plaintiff suffered numerous damages as a result.

## COUNT II
## SEXUAL HARASSMENT AND HOSTILE WORK ENVIRONMENT UNDER TITLE VII

77. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint as if more fully set forth herein at length.

78. Title VII, 42 U.S.C. § 2000e-2(a), prohibits discrimination in the terms, conditions, and privileges of employment on the basis of sex, including subjecting employees to sexual harassment that is sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment.

79. Plaintiff was subjected to unwelcome sexual harassment by Case, a supervisory employee of Defendants, who held the position of Director of Operations and exercised authority over Plaintiff.

80. The sexual harassment included, but was not limited to, sexually explicit comments directed at Plaintiff's body, sexually suggestive remarks, and unwanted expressions of sexual and romantic interest.

81. The harassment was severe and pervasive, and was based on Plaintiff's sex.

82. The harassment was both subjectively and objectively offensive: Plaintiff perceived the conduct to be hostile and abusive, and a reasonable person in Plaintiff's position would have perceived the conduct to be hostile and abusive.

83. The harassment unreasonably interfered with Plaintiff's work performance and created an intimidating, hostile, and offensive working environment.

84. Defendants knew or should have known of the harassment and failed to take prompt and effective remedial action. Plaintiff reported the harassment to multiple members of Defendants' management and human resources on numerous occasions, including to District Manager Mourad Ali, Human Resources Representative Larry Bain, and President Lisa Church.

85. Despite Plaintiff's repeated complaints, Defendants failed to investigate, failed to discipline Case, failed to separate Plaintiff from her harasser, and failed to take any corrective action whatsoever.

86. Defendants' deliberate failure to respond to Plaintiff's complaints constituted a ratification of Case's unlawful conduct.

87. Defendants are liable for the harassment perpetrated by Case under both a negligence theory, for failing to take reasonable steps to prevent and correct the harassment, and under a vicarious liability theory, as Case was a supervisory employee whose harassment resulted in a tangible employment action, namely Plaintiff's constructive discharge.

88. Defendants cannot establish an affirmative defense under *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998), and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), because (a) the harassment culminated in a tangible employment action—Plaintiff's

constructive discharge—and (b) Plaintiff exercised reasonable care to avoid harm by repeatedly reporting the harassment, and Defendants failed to take any corrective action.

89. Defendants violated Title VII, and Plaintiff suffered numerous damages as a result.

## COUNT III
## RETALIATION UNDER TITLE VII

90. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint as if more fully set forth herein at length.

91. Title VII, 42 U.S.C. § 2000e-3(a), provides that it shall be an unlawful employment practice for an employer to discriminate against any employee because such employee has opposed any practice made an unlawful employment practice by Title VII, or because such employee has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII.

92. Plaintiff engaged in protected activity when she opposed and rejected unlawful sexual advances and harassment, and when she made multiple complaints of sexual harassment to Defendants' management and human resources personnel.

93. Following Plaintiff's protected activity, Defendants subjected Plaintiff to materially adverse employment actions, including constructively discharging her.

94. Defendants' continued refusal to investigate or discipline Case, and their decision to require Plaintiff to continue working in close proximity to him after her complaints to management and Human Resources, occurred after and because of Plaintiff's protected activity.

13

95. Defendants' failure to act following Plaintiff's complaints, and their continued placement of Plaintiff in close proximity to her harasser, constituted materially adverse actions that would dissuade a reasonable employee from making or supporting complaints of discrimination and harassment.

96. Plaintiff reasonably believed any additional complaints would be futile given Defendants' persistent refusal to address her prior reports.

97. There is a causal connection between Plaintiff's protected activity and the adverse employment actions taken against her. Defendants' retaliatory conduct was motivated by Plaintiff's complaints of sexual harassment.

98. Defendants engaged in unlawful employment practices by constructively discharging Plaintiff because of Plaintiff's opposition to Defendants' unlawful employment practices.

99. Defendants violated Title VII, and Plaintiff suffered numerous damages as a result.

## JURY DEMAND

Plaintiff requests a jury trial on all triable issues.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment against the Defendants as follows:

    a. Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII;

    b. Awarding Plaintiff damages, retroactive to her date of constructive discharge, for all lost wages and benefits, past and future, including back pay and front pay, resulting from Defendants' unlawful employment practices;

c.  Awarding Plaintiff compensatory damages for mental, emotional, and physical injury, distress, pain, and suffering;

d.  Awarding Plaintiff punitive damages against all Defendants, jointly and severally;

e.  Awarding Plaintiff reasonable attorneys' fees, costs, and expenses incurred in the prosecution of this action;

f.  Awarding Plaintiff pre-judgment and post-judgment interest as provided by law;

g.  Awarding Plaintiff such other and further relief as the Court may deem equitable, just, and proper to remedy Defendants' unlawful employment practices.

Respectfully submitted,

DEREK SMITH LAW GROUP, PLLC

<u>/s/ Ian M. Bryson, Esquire</u>
IAN M. BRYSON, ESQUIRE
450 7th Avenue, 30th Floor
New York, NY 10123
Direct: (267) 857-0849
ian@dereksmithlaw.com
*Attorneys for Plaintiff, Talia Poole*

Dated: <u>February 18, 2026</u>
        New York, NY